SARTAIN, Judge.
This is a suit for damages for personal injuries suffered by Michael Davis when he was shot by Robert Marie. Also made defendant was State Farm Fire and Casualty Company, which denied coverage. Defendant answered denying liability and alleging that the altercation in which plaintiff was injured was provoked by him. Defendant further reconvened for injuries suffered by himself and his minor son, Ricky Marie, as a result of alleged attacks on them by the plaintiff. Mr. Marie also third partied State Farm, asking judgment against it for any damages which he might be condemned to pay.
After trial on the merits, judgment was rendered in favor of defendants, Robert Marie and State Farm, dismissing plaintiff’s suit. There was further judgment on the reconventional demand in favor of Robert Marie and against plaintiff for $500.00 for Mr. Marie’s injuries and $1,000.00 for those suffered by Ricky. The judgment is silent as to the third party demand. From that judgment, plaintiff has appealed. We affirm.
*371 Plaintiff’s version of the incident is as follows: He testified that he went to Mr. Marie’s service station to have a new tire put on an automobile wheel. He said that he was told by Ricky that the charge was $3.50 and that he felt that the charge was too much. When Mr. Marie came, he told plaintiff the charge was $3.00. Plaintiff said that he tendered a $5.00 bill, which Mr. Marie snatched out of his hand. They went inside the station to get change. Plaintiff testified that when he held out his hand for the change, Mr. Marie slapped it down into his hand in such a manner that it fell on the floor. He asked Mr. Marie to pick up the change and Mr. Marie refused to do so in an insulting and profane manner, whereupon plaintiff hit him.
They began to fight and Ricky came into the station and started hitting plaintiff from behind. Finally, the fight was broken up by Gerald Harris, and plaintiff went outside the station. Mr. Marie also came out, after a while, and was standing about ten feet from plaintiff. Ricky came out of the station and was walking fast toward plaintiff. He claims that he did not want to “take any chances” so when Ricky got to him, plaintiff hit him, knocking him to the ground.
He then saw Mr. Marie pull a gun from under his shirt. Plaintiff testified that he held his hands up and began walking back, away from Mr. Marie, and asked him not to shoot him. However, plaintiff said that Mr. Marie shot him, inflicting the injuries for which plaintiff now is seeking damages.
Defendant’s story of what happened is quite different. He testified that plaintiff came to have two tires mounted on some rims. He started the job, but was called to the phone and Ricky finished it up. There was an argument about the charge, which Ricky had told plaintiff would be $3.50. Mr. Marie subsequently reduced the price to $3.00 and plaintiff gave him a $5.00 bill. When Mr. Marie made change, he gave plaintiff two $1.00 bills which he placed on the counter. After making change for another customer, Mr. Marie discovered that, somehow, plaintiff’s change had fallen to the floor. Plaintiff, in a loud, insulting and obscene manner, demanded that Mr. Marie pick up the change. Mr. Marie stated that he wanted no trouble in his station, and was bending over to pick up the money, when plaintiff hit him, knocking him across the room and to the floor. Plaintiff came at Mr. Marie while he was on the floor, and Ricky ran into the station to try to pull plaintiff off of his father. There was a struggle, and finally Mr. Harris was able to pull plaintiff out of the station and calm him down somewhat.
Then plaintiff began screaming that he was going to his car and get his gun and kill Mr. Marie and Ricky. Mr. Marie then went to his house and got a shotgun and a pistol. Mrs. Marie called the sheriff. Mr. Marie returned to the station, and cautioned Ricky to remain inside, and called the sheriff’s office again. However, because there was a car that Ricky was servicing, he told him to go outside and complete the job.
Plaintiff then jumped in front of Ricky and hit him near the eye, knocking him to the ground and causing severe bleeding. Ricky was on his knees on the ground, with his head down in his hands, bleeding, and Mr. Marie, seeing that plaintiff was getting ready to hit him again, pulled his gun and shot plaintiff. He testified that he was afraid that plaintiff was going to kill Ricky and that he had no other way of stopping him.
In McCullough v. McAnelly, 248 So.2d 7 (1st La.App., 1971), we reviewed the jurisprudence applicable in cases such as this. We stated therein:
“The law applicable in this situation is clear and well settled. Article 236 of the Civil Code provides:
“ ‘Fathers and mothers may justify themselves in an action begun against them for assault and battery, if they have acted in the defense of the persons of their children.’
“In the recent case of Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969), the court said:
*372 “ Tt is correctly stated in Alexander v. McCray (La.App.), 190 So.2d 463 that “the law is well settled in actions for damages for battery that a plaintiff cannot recover damages for such battery if the evidence establishes that he is at fault in provoking the difficulty in which the injury complained of is received. See Oubre v. Judice (et al.) (La.App., 1962) 147 So.2d 745, and the cases therein cited.” Also pertinent are Stothart v. Louisiana-Arkansas Railway Company, 127 La. 409, 53 So. 668 and Johnson v. Princeville Canning Company et al. (La.App.), 205 So.2d 449.
“ Tt is equally well settled that even where there is an aggressive act, justifying a battery, the person retaliating may use only so much force as is necessary to repel the aggression; and that if he goes beyond this, he is using force in excess of what would have been reasonably necessary, he is liable for damages for injury caused by the employment of such unnecessary force. Oakes v. H. Weil Baking Company et al., 174 La. 770, 141 So. 456, Whittington v. Levy (La.App.), 184 So.2d 577, Bauman v. Heausler (La.App.), 188 So.2d 189 and Mut v. Roy et al. (La.App.), 185 So.2d 639.
“ ‘Of course, each case depends on its own peculiar facts and circumstances; and resort must be had to the evidence to determine who was the aggressor and whether more force than necessary was used to repel the aggression.’
“We find the following judicial declarations to be pertinent:
“ ‘Of course, resort to the use of a dangerous weapon in order to repel a supposed attack upon a defendant’s person or that of persons to whom he owes a duty to protect cannot be countenanced as justifiable save in exceptional cases where the actor’s fear of the danger is not only genuine but is founded on facts which would be likely to produce similar emotions in men of reasonable prudence.’ Patterson v. Kuntz, 28 So.2d 278 (Orl.La.App.1946).
“ ‘For the privilege of self-defense to exist, it is not necessary that the danger actually exist. It is only necessary that the actor have grounds which would lead an ordinary reasonable man to believe it exists, and that he so believe. All the facts and circumstances are to be taken into account to determine the reasonableness of the belief.’ Pearson v. Taylor, 116 So.2d 833 (La. App. 2 Cir.1959).
“ Tt was sufficient that he reasonably believed the danger to his brother’s life to be imminent. Given this belief based on reasonable grounds, immunity from liability is not judicially withdrawn because some other reasonable man may have perceived the idea of disabling the assailant instead of shooting him. Detached reflection, or a pause for consideration, cannot be demanded under such trying circumstances which by their very nature require a split second decision. To reason otherwise would establish a premise totally unrelated to normal human conduct under the stress of a spontaneous overflow of powerful emotions.’ Wilson v. Dimitri, 138 So.2d 618 (La.App. 4 Cir. 1962).”
In his written reasons for judgment, the trial judge said:
“There is one point clear to this Court and that is there were two separate incidents involved in this situation. The first occurred inside the service station and regardless of who is right and wrong in that situation, the Court does not believe the difficulties arising there are controlling of the outcome of this lawsuit. Mr. Davis was allowed to leave the service station and he had every opportunity to withdraw from the scene and to avoid any further confrontation or trouble with the Maries. Instead of leaving, as he should have, he stayed at the service station and the Court cannot but conclude he did so for no other purpose than to cause trouble. His attack upon Ricky was unjustified, uncalled for, unprovoked, and was vicious and brutal. The Court can *373 readily understand the concern Mr. Marie had when he saw this attack upon his son. He sees his son viciously struck in a surprise attack by the plaintiff, knocked to the ground, bleeding, in a helpless position and apparently seriously injured. It appeared to Marie that Davis intended and would continue the assault on Ricky. Based on the fight in the service station, Marie was physically incapable of handling the plaintiff by himself. Under those circumstances and conditions, this Court cannot say that the reactions of Mr. Marie in defense of his son was unreasonable. The seriousness of the attack and the viciousness thereof is vividly shown in the photographs introduced in evidence by the defendant marked ‘Marie # 1’ and ‘Marie # 2’. Ricky was obviously seriously injured in the face as a result of the uncalled for and unprovoked attack by the plaintiff. The Court is of the opinion that Mr. Davis brought the trouble on himself. Plaintiff has no reason to complain about what happened to him since he provoked and caused his injury.”
In order to reach his conclusion, the trial judge accepted defendant’s version of the circumstances, and was of the opinion that the force used to protect his son was not unreasonable under the circumstances. We find no manifest error in this conclusion.
The judgment appealed from is therefore affirmed at plaintiff’s cost.
AFFIRMED.